### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELLA M. SAMUEL, | ) |
|         Plaintiff, | ) |
| vs. | ) No. 15-780-NJR-SCW |
| JESSICA TRAME, | ) |
|         Defendant. | ) |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant, JESSICA TRAME, in her Official Capacity as Bureau Chief of the Illinois State Police Firearms Services Bureau, by and through her attorney, Lisa Madigan, Attorney General of Illinois, and hereby submits her reply[1] in support of Defendant's motion for summary judgment, stating as follows:

### ARGUMENT

Plaintiff advances two arguments in opposition to Defendant's motion. First, Plaintiff asserts that the Court need not undergo any substantive analysis of whether the Firearm Concealed Carry Act ("the Act"), 430 ILCS 66/1 *et seq.*, and associated regulations pass constitutional muster. Second, Plaintiff argues that, in essence, Illinois' attempt to verify the qualifications of individuals seeking concealed carry licenses cannot be perfectly executed. Neither of the Plaintiff's arguments provides a sufficient basis to hold that the challenged regulations are unconstitutional. The Defendant is entitled to summary judgment.

---

[1] Pursuant to Southern District Local Rule 7.1(c)(2) reply briefs in support of motions for summary judgment are generally disfavored, and a party filing a reply must state exceptional circumstances justifying a reply brief. Here, subsequent to filing a motion for summary judgment and receiving Defendant's response, Plaintiff demanded an opportunity to depose Defendant Trame. Defendant's deposition is the only evidence offered in opposition to Defendant's motion. As such, Defendant should be allowed an opportunity to reply, because the deposition had not been requested and had not occurred when Defendant filed her motion.

A. **The Act's Residency Requirement is Subject to Intermediate Scrutiny.**

Plaintiff cites to *Heller* and *McDonald* for the proposition that no interest balancing is required – that mere invocation of the Second Amendment requires invalidation of the Act's residency provisions. *See District of Columbia v. Heller*, 554 U.S. 570, 634–35 (2008); *McDonald v. Chicago*, 561 U.S. 742, 785–86 (2010). However, the Court in *Heller* made clear that its rulings were limited to "absolute prohibition of handguns held and used for self-defense in the home" and held that its ruling did not "clarify the entire field." *Heller*, 554 U.S. at 635. Similarly, in *McDonald*, the Court held that incorporation "*limits* (but by no means eliminates) [the states'] ability to devise solutions to social problems that suit local needs and values." *McDonald*, 561 U.S. at 785 (emphasis in original). Pursuant to the Court's recognition that the states retain the ability to regulate, the Seventh Circuit has held that regulation of the Second Amendment is subject to intermediate scrutiny. *See Ezell v. Chicago*, 651 F.3d 684, 708 (7th Cir. 2011).

Plaintiff's response does not adequately engage Defendant's assertion that Plaintiff's desire, as a nonresident, for a concealed carry permits falls outside the core Second Amendment right or that intermediate scrutiny applies to the challenged regulations. *See Id*. With respect to the public-interest justification, Plaintiff asserts that, as a member of the armed forces, Plaintiff is potentially a target for attack. (Doc. 30 at 10–11). Plaintiff asserts that this establishes that Plaintiff has a "stronger self-defense claim" than the plaintiffs in *McDonald*, but does not explain this position. *Id*. Plaintiff does not otherwise analyze or contest Defendant's assertion as to the appropriate level of review. Plaintiff's position is not supported by the case law because the challenged regulation is not an "absolute prohibition." *See Heller*, 554 U.S. at 635. As such, Defendant's assertion that the interest at issue – confirming the qualifications of nonresidents to

aid "suppressing armed violence by keeping guns out of the hands of presumptively risky people[,] . . . . including criminals, . . . mental defectives, armed groups who would supplant duly constituted public authorities, and others whose possession of firearms is similarly contrary to the public interest" – has not been challenged by Plaintiff. (*See* Doc. 28 at 15 (internal quotation marks omitted.) Therefore, intermediate scrutiny is the applicable mode of review.

### B. The Residency Requirement is Substantially Related to the Government's Public-Interest Justification.

Under *Ezell*, the intermediate scrutiny applied to the challenged regulation requires "a fit between the legislature's ends and the means chosen to accomplish those ends, . . . a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Id* (quoting *Bd. of Trs. of State Univ. of N.Y.v. Fox*, 492 U.S. 469, 477 (1989). Defendant's motion demonstrated that Montana's firearms laws do not allow the Illinois Department of State Police to confirm, as it does daily with Illinois residents, the qualifications and ongoing eligibility of nonresident applicants. (Doc. 28-1 ¶ 21); (Doc. 28-1 ¶ 29 (establishing that Montana does not track voluntary mental health commitments or prohibit firearm possession for individuals who have been subject to voluntary commitment in the preceding five years).)

Plaintiff's arguments do not dispute the determination that Illinois could not acquire the necessary information from Montana. Rather, Plaintiff disputes that Illinois has a valid entitlement to such information. (Doc. 31 at 6. ("[I]t is none of the government's business what a doctor and patient talk about.").) However, it is self-evident that when processing voluntary applications to carry concealed firearms in public, the State has an interest in knowing whether the individual is currently suffering or has recently suffered from mental illness. That Plaintiff disagrees is not a sufficient basis to enjoin enforcement of this regulation.

Because Plaintiff cannot establish that the State is factually incorrect that required information cannot be readily acquired from Montana[2], Plaintiff instead hypothesizes about logistical problems with Illinois' collection of voluntary mental health information. Specifically, based upon questions posed to Defendant Trame in her deposition, Plaintiff argues that it can be conceived that someone, acting illegally, may willfully leave Illinois to seek a voluntary commitment in order to thwart reporting of such commitment to state authorities. (Doc. 31 at 6.) Plaintiff concludes that, based on this hypothetical, and alleged historic problems with reporting of mental health issues in Illinois, that the State's regime for gathering information is "not exactly perfect." (Doc. 31 at 7). However, as discussed above, perfection is not required. Rather, a reasonable fit with the government interest is what the State must establish.

Plaintiff seeks to retain her status as a Montana resident, notwithstanding her being stationed in Illinois. It is fair to presume this is because she intends to visit her home state and return there permanently. As such, Illinois has an interest in verifying that, while in her home state, nothing occurs that would disqualify her from possession of a concealed carry license. Based upon Montana's laws, Illinois cannot confirm Plaintiff's qualifications on an ongoing basis. Illinois residents are subject to daily confirmation. Plaintiff is not entitled to be treated more favorably than Illinois residents. Therefore, the State has established that its regulations are substantially related to an important government interest and is entitled to summary judgment.

---

[2] Citing to a footnote in Defendant's motion, Plaintiff claims that the Department has deemed New Mexico and Virginia to be substantially similar, and that Montana is "no different" from those states because they do not track voluntary admissions. (Doc. 31 at 8.) However, Plaintiff ignores the remainder of the footnote, which establishes that New Mexico and Virginia prohibit individuals with voluntary commitments in the preceding five years from possessing firearms. (Doc 22, at 3, fn. 1.) Montana does not prohibit such individuals, and the comparison does not withstand examination.

15-780-NJR-SCW

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | JESSICA TRAME, |
| Bilal A. Aziz, # 6312287 |  |
| Assistant Attorney General | LISA MADIGAN, Attorney General, State of |
| 500 South Second Street | Illinois, |
| Springfield, IL 62706 |  |
| Phone: (217) 557-0261 | Attorney for Defendant. |
| Fax: (217) 782-8767 |  |
| E-Mail: baziz@atg.state.il.us | By: s/ Bilal A. Aziz |
|  | Bilal A. Aziz, # 6312287 |
|  | Assistant Attorney General |

15-780-NJR-SCW

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2016, the foregoing document, *Defendant's Reply in Support of Motion for Summary Judgment*, was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of same to the following:

    Thomas Maag        tmaag@maaglaw.com

Respectfully Submitted,

By: s/ Bilal A. Aziz
    Bilal A. Aziz, #6312287
    Assistant Attorney General
    500 South Second Street
    Springfield, Illinois  62706
    (217) 782-9056 Phone
    (217) 782-8767 Fax
    E-Mail: baziz@atg.state.il.us